UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPERIAL IRRIGATION DISTRICT,<br><br>                                    Plaintiff,<br><br>v.<br><br>CALIFORNIA INDEPENDENT<br>SYSTEM OPERATOR CORPORATION,<br><br>                                    Defendant. | Case No.: 15-CV-1576-AJB-RBB<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION TO DISMISS**<br><br>(Doc. No. 28) |

Presently before the Court is Defendant California Independent System Operator Corporation's ("CAISO") motion to dismiss Plaintiff Imperial Irrigation District's ("IID") first amended complaint ("FAC") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 28.) IID opposes the motion. (Doc. No. 34.) The Court heard oral argument on this matter on June 23, 2016, and took the matter under submission. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** CAISO's motion. IID's federal antitrust, breach of tariff, and unlawful UCL claims are **DISMISSED WITH PREJUDICE**. IID's fraudulent UCL claim is **DISMISSED WITHOUT PREJUDICE**. Because the Court does not rely on CAISO's exhibit, introduced at the hearing on this matter, (*see* Doc. No. 42), to preclude IID from moving forward with its state law claims, the Court **DENIES AS MOOT** IID's

request to respond to that exhibit. (Doc. No. 44.) *See infra* note 9.

## BACKGROUND

This dispute centers on nondiscriminatory access to California's electric transmission grid.[1] The parties in this litigation are two of the eight entities ("balancing authority" or "BA") that provide electric transmission service and transmission operations services within the State of California. (Doc. No. 26 ¶¶ 2, 23.) IID is the third largest public power utility in California and is headquartered in Imperial County, California. (*Id.* ¶¶ 3, 51.) CAISO is a non-governmental entity created by the State of California and is headquartered in Folsom, California. (*Id.* ¶¶ 62–63.)

IID alleges it competes with CAISO in two markets in California: the transmission service market and the transmission operations services market. (*Id.* ¶ 164.) The transmission service market is the market for interconnecting and transmitting electricity across high voltage, long-distance power lines within California, for delivery to electricity customers located both in California and outside California through interconnected electricity transmission systems. (*Id.* ¶ 165.) The transmission operations services market is a market where the BAs perform operations services within their respective BAAs, including (1) managing the operation and supervising the maintenance of a high-voltage electric transmission network; (2) granting transmission service to wholesale electricity customers; (3) coordinating the generation and transmission outages; and (4) managing the process of transmission to a high-voltage electric transmission network. (*Id.* ¶ 166.) CAISO controls at least 80 percent of each market. (*Id.* ¶¶ 66–67, 169–71.) CAISO's participating transmission owners ("PTOs") own the vast majority of electric transmission assets in California. (*Id.* ¶ 24.) IID controls approximately one percent of each market. (*Id.* ¶ 54.)

_____

[1] On November 24, 2015, the Court ruled on CAISO's motion to dismiss the original complaint, which was largely granted. (*See* Doc. No. 23.) In that order, the Court exhaustively summarized the case's factual background. The Court assumes familiarity with that order and accordingly will recite here only those facts necessary to understand the case's current posture with respect to the instant order.

Each BA controls a separate geographic region within California known as balancing authority areas ("BAAs"). (*See id.* ¶¶ 2, 58.) Only one BA operates in any given BAA. (*See id.* ¶ 68.) CAISO's BAA surrounds IID's BAA on most sides. (*See* Doc. No. 26-1.) While the BAAs do not overlap geographically, IID alleges the parties compete for the business of generators of renewable energy whose facilities are located within or near IID's BAA. (Doc. No. 26 ¶¶ 58, 176; *see* Doc. No. 26-4.) Specifically, the parties compete for connections with these generators to obtain the fees associated with the flow of that electricity across their respective transmission grids. (Doc. No. 26 ¶¶ 58, 176.)

The parties' grids are physically connected at two interties. (*Id.* ¶ 59.) CAISO controls access to the transmission grid within its BAA, having the power to grant or deny access to services on its grid and to determine the terms under which such access is granted. (*Id.* ¶¶ 4–5.) Access to CAISO's grid is necessary for entities within CAISO's BAA that wish to purchase electric generation sources located inside or outside CAISO's BAA, as well as for electricity sellers within CAISO's BAA that wish to deliver electricity to entities outside CAISO's BAA. (*Id.* ¶¶ 5, 174.) Entities located within IID's BAA cannot export electricity onto CAISO's grid without CAISO's permission. (*Id.* ¶ 9.E.)

CAISO also has the authority, under its FERC-approved tariff and its business practice manual ("BPM"), to calculate an entity's "maximum import capability" ("MIC"), that is, the quantity in megawatts ("MW") determined by CAISO for each Intertie into its BAA to be deliverable to the BAA based on CAISO study criteria. (*Id.* ¶¶ 85, 89, 91–92.) CAISO has historically set IID's access to the grid to a MIC of 462 MW. (*See id.* ¶¶ 6, 9.E, 143.) In other words, IID can export from its BAA onto or through the CAISO grid only 462 MW of electric power.[2] (*See id.* ¶ 59.)

---

[2] IID alleges that MIC has nothing to do with the allocation of interstate transmission capacity, but rather, merely acts as an "accounting mechanism." (Doc. No. 26 ¶¶ 84, 86–87.) However, as explained in detail below, the Court finds these newly added allegations irreconcilable with other allegations contained in the FAC and the original complaint, as well as with IID's overarching theory of injury. *See infra* pp. 10–11 and note 6.

The essence of the FAC is that CAISO induced IID, through a series of memoranda and public statements from 2011 through 2014, to invest over $30 million in upgrades to Path 42, one of the two transmission lines that connect IID's BAA to CAISO's. (*See id.* ¶¶ 39, 103, 107–15, 126–34, 141.) Essentially, CAISO forecasted that if IID made certain upgrades to its side of the line, IID's MIC would increase to 1400 MW in 2019 ("expanded MIC"). (*Id.* ¶ 39, 103.) In reliance on CAISO's statements, IID's board of directors approved Path 42 upgrades within its BAA in August 2011, which were completed and placed into service in January 2015. (*Id.* ¶¶ 121–22, 135–37.)

Notwithstanding its knowledge of IID's investment, in July 2014, CAISO reduced IID's expanded MIC to its historic level, citing the closure of the San Onofre Nuclear Generating Station ("SONGS") as the basis for the change. (*Id.* ¶¶ 125, 138, 143, 150.) In that statement, CAISO acknowledged that certain transmission additions—*not* including IID's upgrades to Path 42—restored future additional amount of deliverability from the Imperial zone up to 1000 MW; however, CAISO reserved that 1000 MW for itself, leaving IID with its historic 462 MIC, notwithstanding the fact that IID's BAA comprised 98 percent of the Imperial zone. (*Id.* ¶¶ 145–47, 188.)

Unconvinced that SONGS' closure was the true cause for the reduction to its expanded MIC, IID took it upon itself to investigate. (*Id.* ¶ 153.) Through this investigation, IID discovered CAISO allegedly violated its own BPM and operating procedures, which were promulgated and adopted pursuant to its tariff approved by the Federal Energy Regulatory Commission ("FERC"). (*See id.* ¶ 9.A, 154–55.) Due to this violation, CAISO miscalculated the flow from one of its transmission lines. (*Id.* ¶¶ 155, 173(a).) Had CAISO accurately computed that line's flow, IID's expanded MIC would have been correctly set at 1400 MW without the need for additional upgrades. (*Id.* ¶ 156.)

The elimination of IID's expanded MIC, and CAISO's public misrepresentation of IID's MIC, has resulted in renewable energy developers located near or within IID's BAA to bypass the IID system and connect directly with the CAISO system, thus depriving IID of significant revenue from the provision of interconnection services, transmission

services, and transmission operations services. (*Id.* ¶¶ 9.A, 159, 173(a), 183.) It has also left developers of renewable energy with little ability to plan, finance, and build new renewable energy facilities that connect to IID's transmission system. (*Id.* ¶ 160.) IID alleges that due to the developers connecting directly to CAISO's grid, there is a spillover of energy (of which CAISO knew and planned) onto IID's transmission system, which precludes IID from selling or otherwise using that capacity. (*Id.* ¶ 9.C.) In addition to the reduction in its expanded MIC, IID alleges CAISO has extensively used IID's transmission lines and infrastructure to import substantial out-of-state power without compensating IID for this use. (*Id.* ¶¶ 9.C, 173(g), 193.) IID alleges CAISO's actions were motivated by, *inter alia*, its intent to further its monopolistic position in the relevant markets by forcing IID to join CAISO as a PTO. (*Id.* ¶ 162.)

On July 16, 2015, IID filed the instant action, alleging claims for monopolization and attempted monopolization in violation of § 2 of the Sherman Act, and state law claims of breach of implied contract, conversion, quantum meruit, and restitution. (Doc. No. 1.) The Court largely granted CAISO's motion to dismiss the original complaint on November 24, 2015. (Doc. No. 23.) IID filed the FAC on January 6, 2016. (Doc. No. 26.) On February 5, 2016, CAISO filed the instant motion to dismiss. (Doc. No. 28.) IID opposed the motion, (Doc. No. 34), and CAISO replied, (Doc. No. 35). The Court held a hearing on this matter on June 23, 2016. The Court took the matter under submission, and this order follows.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Plaintiffs must also plead, however, "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations

of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true "merely because they are cast in the form of factual allegations." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)) (internal quotation marks omitted). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

CAISO presents four arguments that it asserts require the FAC's dismissal with prejudice: (1) the filed rate doctrine applies; (2) FERC should have primary jurisdiction over the entire dispute; (3) IID's state law claims are preempted; and (4) IID fails to state its claims. (*See* Doc. Nos. 28-1, 35.) IID counters that CAISO's arguments concerning FERC's jurisdiction do nothing more than seek reconsideration of the Court's prior order. (Doc. No. 34 at 7–8.) The Court addresses each of CAISO's arguments in turn.

### I.   *Breach of Tariff Claim*

As an initial matter, CAISO points out in its reply that IID failed to oppose CAISO's motion to dismiss with respect to IID's breach of tariff claim. (Doc. No. 35 at 2.) The Court agrees with CAISO that IID has apparently abandoned this claim. *See Sanchez v. Maricopa Cnty.*, No. CV 07-1244-PHX-JAT, 2008 WL 4057002, at *7 (D. Ariz. Aug. 27, 2008) ("If

a non-moving party only partially responds to a motion . . . , then the party abandons the claims that it does not address in its opposition to the motion."). At any rate, even had IID defended this claim, it is apparent from the face of the Federal Power Act that it does not permit a private right of action. 16 U.S.C. § 824v(b) ("Nothing in this section [dealing with the prohibition on energy market manipulation] shall be construed to create a private right of action."); *Woolsey v. J.P. Morgan Ventures Energy Corp.*, No. 15cv530-WQH-BGS, 2015 WL 6455571, at *9 (S.D. Cal. Oct. 26, 2015) ("The FPA does not provide a right of action."). The Court thus **GRANTS** CAISO's motion and **DISMISSES** the breach of tariff claim **WITH PREJUDICE**.

## II.   *Filed Rate Doctrine*

CAISO first argues that FERC has exclusive jurisdiction over IID's claims pursuant to either the filed rate doctrine or primary jurisdiction. (Doc. No. 28-1 at 13–20.) IID counters that CAISO improperly seeks reconsideration of the Court's prior rulings, merely rehashing the arguments it first presented to the Court in its motion to dismiss IID's original complaint, which the Court rejected in part. (Doc. No. 34 at 7.)

"Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case.'" *Gallagher v. San Diego Unified Port Dist.*, 14 F. Supp. 3d 1380, 1389 (S.D. Cal. 2014) (quoting *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998))). However, the doctrine "should not be applied woodenly in a way inconsistent with substantial justice." *United States v. Miller*, 822 F.2d 828, 832–33 (9th Cir. 1987). Accordingly, the Court has the discretion to depart from the law of the case if "(1) [t]he first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would result." *Gallagher*, 14 F. Supp. 3d at 1389 (citing *Cuddy*, 147 F.3d at 1114). "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

In the previous ruling finding the filed rate doctrine did not bar IID's claims to the extent it sought to enforce the tariff, the Court principally relied upon the Ninth Circuit's decision in *Brown v. MCI WorldCom Network Services, Inc.* (*See* Doc. No. 23 at 14–15.) In *Brown*, in the context of a claim arising under the Federal Communications Act ("FCA"), the Ninth Circuit held that while "[t]he filed-rate doctrine precludes courts from deciding whether a tariff is reasonable, . . . it does not preclude courts from interpreting the provisions of a tariff and enforcing that tariff." *Brown*, 277 F.3d 1166, 1171–72 (9th Cir. 2002). However, the Ninth Circuit went on to note that a contrary conclusion "would render meaningless the provisions of the FCA allowing plaintiffs redress in federal court." *Id.* at 1172 (citing 47 U.S.C. §§ 206–07).

Considering the parties' arguments anew in light of controlling case law decided after the decision in *Brown*, the Court concludes its reliance on *Brown* to hold open the door to claims seeking to enforce the CAISO tariff was in error. Unlike the FCA, the FPA does not provide plaintiffs redress in court. 16 U.S.C. § 824v(b); *see also Mont.-Dakota Utils. Co. v. N.W. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951) ("the prescription of the [FPA] is a standard for [FERC] to apply and, independently of [FERC] action, creates no right which courts may enforce"); *California ex rel. Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046, 1063 (N.D. Cal. 2003) (holding *Brown* to be inapposite for this reason).

Furthermore, subsequent Ninth Circuit case law specifically addressing interstate transmission of electricity under the FPA makes clear that FERC enjoys plenary jurisdiction over enforcement of, and providing redress for, violations of FERC-approved tariffs. *See Pub. Util. Dist. No. 1 v. Dynergy Power Mktg., Inc.*, 384 F.3d 756, 762 (9th Cir. 2004) ("if the defendants sold electricity in violation of the filed tariffs, [plaintiff's] only option is to seek a remedy from FERC"); *California ex rel. Lockyer v. Dynergy, Inc.*, 375 F.3d 831, 851 (9th Cir. 2004) [hereinafter *Lockyer*] ("our cases specifying the nature and scope of exclusive FERC jurisdiction make clear that the interstate 'transmission' or 'sale' of wholesale energy pursuant to a federal tariff—not merely the 'rates'—falls within FERC's exclusive jurisdiction"); *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*,

295 F.3d 918, 931 (9th Cir. 2002) [hereinafter *TANC*] ("We [] hold that FERC's exclusive jurisdiction over the interstate transmission of electricity extends to any claims of entitlement to a specific allocation of interstate transmission capacity[.]"). Like the plaintiff in *Lockyer*, "[t]o the extent [IID] is seeking to enforce the [] provisions of the [CAISO] tariff, . . . this conflicts with the filed rate doctrine and the exclusive authority conferred to FERC to enforce its tariff." 375 F.3d at 853. For all these reasons, the Court finds it clearly erred in permitting IID's claims predicated on enforcement of the CAISO tariff to go forward.

IID argues that even if the filed rate doctrine applies, the competitor exception does not preclude the Court's consideration of its claims. In *Cost Management Services, Inc. v. Washington Natural Gas Co.*, the Ninth Circuit recognized the competitor exception to the filed rate doctrine, stating "the rationales offered for the [] doctrine do not justify extending [it] to preclude rate-based damages actions brought by competitors of regulated entities[.]" 99 F.3d 937, 948 (9th Cir. 1996).

The Court finds that IID has sufficiently alleged facts that CAISO and IID compete for connections with renewable energy generators located within IID's BAA. Notwithstanding these allegations, the Court deems it inappropriate to extend the competitor exception to the instant case. *Cost Management Services, Inc.* involved challenges to tariffs filed with a *state* regulatory commission. 99 F.3d at 940. This is a significant distinction from the present case where the tariff at issue was filed with, and approved by, FERC, a federal regulatory commission with *exclusive* jurisdiction over the enforcement of tariffs filed with it. *See id.* at 947 (rejecting Sixth Circuit's decision in *Pinney Docks* in part because the Sixth Circuit's assumption that the Interstate Commerce Commission necessarily takes "the pro-competition policies of the antitrust laws" into account when calculating rates should not be extended "to cases involving the plethora of state agencies which approve commercial tariffs of a variety of regulated enterprises"). Extension of the competitor exception to such disputes would run afoul of *TANC* and its progeny that place disputes directly affecting transmission rates within FERC's exclusive

jurisdiction.[3] The Court is disinclined to do so.[4]

IID's final argument against the filed rate doctrine's application—that MIC has nothing to do with transmission capacity—is similarly unavailing. (Doc. No. 34 at 23–26.) In the FAC, IID alleges that MIC is merely an "accounting mechanism" that has no bearing on transmission capacity. (Doc. No. 26 ¶ 84.) While IID points to certain CAISO-generated documents that tend to support this position,[5] this allegation simply cannot be reconciled with IID's theory of CAISO's alleged misconduct. If CAISO's reduction to IID's expanded MIC had no effect on IID's ability to export electricity onto CAISO's grid, then there is nothing to stop IID from doing so where it is physically capable of doing so. In other words, if MIC did not act as a cap or restraint on IID's ability to export electricity, IID would have nothing about which to complain. IID's assertion that "MIC has nothing to do with the allocation of transmission capacity" is simply implausible, and the Court accordingly

---

[3] The Court notes that neither party in *TANC* can be construed as a customer of the other, yet the Ninth Circuit readily found the filed rate doctrine applicable to bar the plaintiff's suit. *See TANC*, 295 F.3d at 923 (describing the relationship as a contractual agreement whereby the parties jointly constructed and interconnected with the electricity intertie in dispute).

[4] IID points to no case law that has applied the competitor exception to a claim challenging or seeking enforcement of a tariff filed with a federal regulatory commission, nor has the Court found any. IID's reliance on *Wah Chang v. Duke Energy Trading & Marketing, L.L.C.*, 507 F.3d 1222, 1226 (9th Cir. 2007), and *County of Stanislaus v. Pacific Gas & Electric Co.*, 114 F.3d 858, 886 (9th Cir. 1997), does not aid its position given that the Ninth Circuit gave short shrift to the exception in finding it did *not* apply in those cases.

[5] IID cites a letter from CAISO to FERC, in which CAISO states certain proposed amendments to its tariff concerning MIC assignment "do not affect physical transmission capability of the ISO Controlled Grid, transmission rights, or the manner in which transmission service is obtained under the ISO Tariff." Letter from CAISO, to the Honorable Philis J. Posey, Acting Secretary, Federal Energy Regulatory Commission 1 (Mar. 22, 2007), *available at* http://elibrary.ferc.gov/idmws/file_list.asp?document_id= 13489719. The Court finds this letter to be the proper subject of judicial notice because its source, FERC's website, "cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court therefore takes judicial notice of the letter.

rejects it.[6] (Doc. No. 26 ¶ 86.) *See Smith v. Wilt*, No. 12-cv-05451-WHO, 2013 WL 5675897, at *4 n.5 (N.D. Cal. Oct. 17, 2013) ("[t]he alteration of [] allegations . . . , and omission of the contradictory allegations, make plaintiffs' current allegations . . . simply *not plausible*" (emphasis in original)).

In sum, the Court finds it clearly erred in permitting IID to bring claims seeking enforcement of the CAISO tariff. The Court rejects IID's assertions that a competitor exception applies under the circumstances of this case and that MIC has no impact on transmission capacity. The Court therefore **GRANTS IN PART** CAISO's motion to dismiss and **DISMISSES WITH PREJUDICE** IID's federal antitrust claims.

## III. *Primary Jurisdiction*

CAISO next argues that the doctrine of primary jurisdiction requires dismissal of IID's claims because the FAC "demonstrate[s] the complexity of the studies and calculations that CAISO administers under FERC's oversight and the wider impact of IID's

---

[6] The Court is cognizant of its duty to accept as true the FAC's factual allegations. However, this duty does not extend to allegations that are implausible in light of earlier iterations of the plaintiff's complaint. *See, e.g.*, *Fasugbe v. Willms*, No. CIV. 2:10-2320 WBS KJN, 2011 WL 2119128, at *5 (E.D. Cal. May 26, 2011) (stating that while "plaintiffs may alter their allegations in an amended complaint, [] the court may properly consider the plausibility of the FAC in light of the prior allegations"). In its original complaint, IID stated that MIC is "the maximum amount of power that can be safely and reliably imported from one BAA to another BAA." (Doc. No. 1 ¶ 94.) IID further alleged that "CAISO will not allow IID to pass additional energy over either bridge," and without this permission from CAISO, "IID cannot provide existing and potential customers electric transmission service that originates within [] IID's BAA and terminates within or travels across CAISO's BAA . . . ." (*Id.* ¶¶ 4, 90.) Furthermore, the allegation that MIC has nothing to do with transmission capacity is belied by other allegations in the FAC and IID's theory of its case altogether. For example, IID alleges that "the amount of Expanded MIC acts as a restriction in the flow of electricity from IID to CAISO's territory." (Doc. No. 26 ¶ 59.) IID further alleges that "renewable energy generators within IID's BAA [] cannot transmit energy across the[] two connection points or interties [connecting IID's BAA to CAISO's] to [customers] within CAISO's BAA unless CAISO assigns the requisite amount of [] Expanded [MIC] to each intertie." (*Id.* ¶ 178.) In light of these allegations, it is simply implausible that MIC has no effect on transmission allocation.

position on the flow of electricity in much of California and beyond." (Doc. No. 28-1 at 18–20.)

The primary jurisdiction doctrine is a vehicle by which courts may "stay proceedings or [] dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Although there is "[n]o fixed formula [] for applying" the doctrine, *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956), courts in the Ninth Circuit have generally held the doctrine applicable where there is "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration," *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) (citing *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)). However, the doctrine should be used only if a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency," *Brown*, 277 F.3d at 1172 (citing *Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 442 (1907)), or if "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme," *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 353 (1963) (citations omitted).

In its prior order, the Court concluded that the doctrine of primary jurisdiction does not preclude IID's state law claims. CAISO has presented no compelling reasons for the Court to revisit that decision, and it declines to do so. *See Alexander*, 106 F.3d at 876 ("Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion.").[7] The Court therefore **DENIES IN PART** CAISO's

---

[7] CAISO asserts the Court should apply the doctrine of primary jurisdiction because the Court will ultimately be faced with complex issues when determining whether CAISO complied with its tariff. (Doc. No. 28-1 at 18–20.) However, the Ninth Circuit has made clear that the doctrine is used to route only "threshold decision[s] as to certain issues to the

1   motion to the extent it seeks dismissal based upon the doctrine of primary jurisdiction.

2   **IV.   Preemption**

3        CAISO finally argues that "there can be no serious dispute that FERC's exclusive
4   authority to regulate interstate transmission and wholesale of electric power preempts state
5   law claims like those IID asserts." (Doc. No. 28-1 at 20–21.) IID counters, contending that
6   its state law claims are neither field nor conflict preempted. (Doc. No. 34 at 28–30.)

7        "Federal preemption of state law is rooted in the Supremacy Clause, Article VI,
8   clause 2, of the United States Constitution." *TANC*, 295 F.3d at 928. Preemption of state
9   law "is compelled whether Congress' command is explicitly stated in the statute's language
10  or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S.
11  519, 525 (1977) (citations omitted).

12       "In the absence of express preemption, federal law may pre-empt state claims in two
13  ways . . . ." *Lockyer*, 375 F.3d at 849. "Field preemption" occurs where "Congress
14  evidences an intent to occupy a given field . . . ." *Silkwood v. Kerr-McGee Corp.*, 464 U.S.
15  238, 248 (1984) (citations omitted). Where field preemption is not applicable, "conflict
16  preemption" may nonetheless preempt state law claims "to the extent [state law] actually
17  conflicts with federal law, that is, when it is impossible to comply with both state and
18  federal law, or where the state law stands as an obstacle to the accomplishment of the full
19  purposes and objectives of Congress." *Id.* (citations omitted).

20       IID first argues the doctrine of field preemption does not apply because its state law
21  claims "seek compensation for CAISO's use of IID's grid, a subject not addressed in the
22  tariff." (*Id.* at 28–29.) In its prior order, the Court noted that IID's conversion claim,

23

24  _____

25  agency charged with primary responsibility for governmental supervision or control of the
    particular industry or activity involved." *Gen. Dynamics Corp.*, 828 F.2d at 1362. In the
26  context of a motion to dismiss brought under Rule 12(b)(6), the Court "must accept as true
    [IID's] allegation that [CAISO] violated [its t]ariff. For that reason, the 'threshold decision'
27  which [CAISO] would have [the Court] refer to [FERC] must necessarily be resolved in
28  favor of [IID]." *Cost Mgmt. Servs., Inc.*, 99 F.3d at 949.

through which IID sought redress for CAISO's alleged unauthorized use of its facilities, was preempted by the FPA. (Doc. No. 23 at 16–17.) Relying on the Supreme Court's decision in *New England Power Co. v. New Hampshire*, 455 U.S. 331, 340 (1982), the Court held that "controlling case law makes clear that the transmission of electric energy in interstate commerce is a matter of federal concern." (Doc. No. 23 at 17.) The Court found that "whatever remedy to which IID may be entitled for [CAISO's] alleged conversion is within the exclusive jurisdiction of FERC." (*Id.*)

Having looked more deeply at this issue, and with the benefit of the parties' briefing, the Court concludes its holding that IID's state law claims were field preempted was clearly erroneous. While it is true that transmission of electric energy in interstate commerce is generally a matter of federal concern, *see* 16 U.S.C. § 824(a), FERC simply has no jurisdiction over the transmission facilities at issue here, namely, IID's facilities, because FERC's jurisdiction extends only to "public utilities," *id.* § 824(b)(2). "Public utility" is defined as "any person who owns or operates facilities subject to" FERC's jurisdiction. *Id.* § 824(e). "The FPA's definition of 'person' does not include municipalities or state agencies." *Bonneville Power Admin. v. F.E.R.C.*, 422 F.3d 908, 917 (9th Cir. 2005); *see also id.* at 915 ("Congress was careful to specify which utilities fall within the definition of 'public utility.' Even though governmental and municipal utilities are public in normal parlance, they are not 'public utilities' under the FPA.").[8]

IID is indisputably a municipality. *See* 16 U.S.C § 796(7) (defining "municipality" as "a city, county, *irrigation district*, drainage district, or other political subdivision or agency of a State competent under the laws thereof to carry on the business of developing, transmitting, utilizing, or distributing power" (emphasis added)). Thus, IID's state law claims are beyond the purview of FERC's jurisdiction. In *Resale Power Group of Iowa*

---

[8] CAISO conceded as much at the hearing and in its nonopposition to IID's request to respond to CAISO's exhibit. (*See* Doc. No. 46 at 2 ("IID continues to focus on the fact that it is not regulated by FERC. . . . That fact is *not contested* . . . ." (emphasis added)).)

*WPPI Energy*, 130 FERC ¶ 61217 (2010), FERC noted it had previously found it did not have jurisdiction over CIPCO's complaint seeking the "collect[ion of] a charge [from Midwest ISO] for the alleged unauthorized use of CIPCO's transmission facilities" based on its lack of jurisdiction because CIPCO was "not a public utility and is not a transmission-owning member of Midwest ISO." *Id.* ¶ 61990; *see id.* ¶ 61986. As such, CIPCO was permitted to bring claims in state court for breach of an implied-in-fact contract, unjust enrichment, trespass, and conversion. *Id.* ¶ 61986. Like CIPCO, IID seeks to collect fees for CAISO's alleged unauthorized use of IID's transmission facilities. (Doc. No. 26 ¶¶ 9.C, 173(g), 193.) These claims fall outside the ambit of FPA and FERC's jurisdiction and are thus not field preempted.

The Court finds the same conclusion follows with respect to conflict preemption. IID, through its state law claims, seeks compensation for CAISO's alleged unauthorized use of IID's transmission facilities. CAISO's FERC-approved tariff does not purport to govern the compensation for such use.[9] Further, as a municipality, FERC has no jurisdiction over IID's transmission facilities. As such, entertaining IID's state law claims presents no conflict with federal law. Thus, the doctrine of conflict preemption also does not apply. *See Silkwood*, 464 U.S. at 248 (stating conflict preemption applies only where state law "*actually* conflicts with federal law" (emphasis added)).

## V. *State Law Claims*

Finally, CAISO argues that IID has failed to state any of its state law claims. (Doc.

---

[9] At the hearing on this matter, CAISO argued that its tariff purportedly governs "unscheduled overflow" onto IID's grid. (Doc. No. 42.) Be that as it may, but CAISO ignores the fact that the vast majority of IID's allegations related to CAISO's use of IID's grid relates to its knowing, unauthorized use. (Doc. No. 26 ¶¶ 9.C, 173(g), 193.) Accepting these allegations as true, CAISO's use of IID's grid goes beyond the mere occasional and accidental overflow. Accordingly, the Court finds, for purposes of the instant motion, that the FAC's allegations take IID's state law claims outside the reach of CAISO's tariff. Because the exhibit CAISO provided the Court and IID at the hearing does little to change the IID-favored outcome on this issue, the Court **DENIES AS MOOT** IID's *ex parte* motion for an opportunity to respond to the exhibit. (Doc. No. 44.)

No. 28-1 at 29–33.) IID argues the contrary. (Doc. No. 34 at 30–31.)

### A.   Breach of Implied Contract

CAISO seeks dismissal of the breach of implied contract claim because (1) the alleged agreement could not have been performed within one year; and, alternatively, (2) no formation occurred. (Doc. No. 28-1 at 29–31.) IID counters that its performance takes the contract outside the purview of the statute of frauds. (Doc. No. 34 at 30.) IID further contends that "the law infers a promise to pay even when there was no express promise to pay," and thus CAISO's argument that it did not intend to contract fails. (*Id.*)

"[T]he vital elements of a cause of action based on contract are mutual assent (usually . . . an offer and acceptance) and consideration." *Div. of Labor Law Enforcement v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 275 (1977). "An implied-in-fact contract shares the same elements as an express contract, except that offer and acceptance are implied from the parties' conduct." *Garibaldi v. Bank of Am. Corp.*, No. C 13-2223 SI, 2014 WL 1338563, at *3 (N.D. Cal. Apr. 1, 2014). To state a claim for breach of contract under California law, a plaintiff must allege "(1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach." *Buschman v. Anethesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014).

### 1.   CAISO's Assent

CAISO first argues that an implied contract was not formed because it did not assent to the terms of the alleged contract. (Doc. No. 28-1 at 30–31.) CAISO asserts that IID's unilateral actions of approving and completing the Path 42 upgrades are insufficient to create a contract. (*Id.* at 30.) CAISO is correct that "the assumption, intention or expectation of either party alone, not made known to the other, can give rise to no inference of an implied contract . . . ." *Travelers Fire Ins. Co. v. Brock & Co.*, 47 Cal. App. 2d 387, 392 (1941). However, those are not the facts alleged in the FAC. IID alleges CAISO proposed the Path 42 upgrades. (Doc. No. 26 ¶¶ 103–04, 107–10.) In reliance on CAISO's actions, IID's board of directors approved the upgrades to Path 42. (*Id.* ¶ 121.) In 2011,

IID publicly announced that the upgrades would "help [IID] deliver renewable energy generation to markets within the CAISO grid." (*Id.* ¶¶ 124–25.) Following IID's approval, CAISO continued to acknowledge the Path 42 upgrades and corresponding expanded MIC. (*Id.* ¶¶ 126–27, 129, 132–34.) Based upon CAISO's continued acknowledgement of the project, IID expended over $30 million in upgrades to Path 42. (*Id.* ¶¶ 135–37.)

The Court finds CAISO's multiple public statements from 2011 through 2013 acknowledging the Path 42 project and the expected increase to IID's MIC are sufficient to support, at this stage of the litigation, an inference that CAISO implicitly assented to the alleged contract, namely, that CAISO would increase IID's MIC in exchange for IID's upgrades to its side of Path 42. It is these allegations that also distinguish the instant case from those upon which CAISO relies. The plaintiffs in *HMBY, LP v. City of Soledad* did not allege that the defendants suggested they would approve the plaintiffs' land development projects if the plaintiffs expended resources on those developments. No. C12-00107, 2012 WL 1657124, at *1, *4 (N.D. Cal. May 10, 2012). The court found the simple fact that plaintiffs expended such resources, alone, did not bind the defendants to process and approve the plaintiffs' projects. *Id.* at *4. Similarly, the court in *Gateway Rehab & Wellness Center, Inc. v. Aetna Health, Inc.* dismissed the plaintiff's implied breach of contract claim because it did "not plausibly allege[] it possessed anything beyond a mere expectation that [the d]efendant would reimburse it for services rendered to Patients." No. SACV 13-0087 DOC (MLGx), 2013 WL 1518240, at *3 (C.D. Cal. Apr. 10, 2013). Because the plaintiff "never allege[d] that it made known to [the d]efendant that it expected [the d]efendant to continue to reimburse it, nor that [the d]efendant was somehow made aware of this expectation[,]" the court concluded the plaintiff failed to allege mutual assent on the defendant's part. *Id.*

Unlike the plaintiffs in *HMBY* and *Gateway*, IID here has alleged that it made known to CAISO its intent to upgrade Path 42 following CAISO's proposal and approval of the project. Following IID's announcement, CAISO continued to state the necessity of the project and the resulting increase to IID's MIC. For these reasons, the Court rejects

CAISO's argument that it did not assent to the contract as a basis for dismissing the breach of implied contract claim.

### 2.      Statute of Frauds

CAISO alternatively argues that even if it assented to the contract, that the contract could not be performed within one year renders it unenforceable under the statute of frauds. (Doc. No. 28-1 at 29–30.) IID counters that its performance takes the contract outside the statute of frauds' purview. (Doc. No. 34 at 30.)

"An agreement that by its terms is not to be performed within a year from the making thereof" is invalid if not in writing. Cal. Civ. Code § 1624(a)(1). However, "[w]here the contract is unilateral, or, though originally bilateral, has been fully performed by one party, the remaining promise is taken out of the statute [of frauds], and the party who performed may enforce it against the other." *Secrest v. Sec. Nat'l Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544, 556 (2008) (citation omitted); *see Dougherty v. Cal. Kettleman Oil Royalties*, 9 Cal. 2d 58, 81 (1937).

Reviewing the allegations of the FAC, the Court finds IID has sufficiently alleged its full performance, thus removing the implied contract from the statute of frauds' reach. *See Dougherty*, 9 Cal. 2d at 81; *Secrest*, 167 Cal. App. 4th at 556. IID alleges it invested over $30 million in constructing the upgrades to its side of Path 42. (Doc. No. 26 ¶¶ 135–37.) IID further alleges the upgrades were completed in January 2015. (*Id.* ¶ 136.) Such allegations sufficiently allege IID's full performance for purposes of removing the implied contract from the statute of frauds' reach because it required IID to do something more than the mere payment of money, specifically, physically constructing the upgrades. *See Secrest*, 167 Cal. App. 4th at 556 (explaining that "[t]he principle that full performance takes a contract out of the statute of frauds has been limited to the situation where performance consisted of conveying property, rendering personal services, or doing something other than payment of money"). The Court therefore **DENIES IN PART** CAISO's motion to the extent it seeks dismissal of the breach of implied contract claim. *//*

**B.      Conversion**

CAISO seeks dismissal of the conversion claim because IID fails to allege how it was entitled to compensation for CAISO's alleged use of IID's transmission facilities or that IID had exclusive possession or control of the facilities. (Doc. No. 28-1 at 31.) IID counters, arguing that pleading ownership alone is sufficient, but even if exclusive possession need also be pleaded, it has done so. (Doc. No. 34 at 30–31.)

Conversion under California law has three elements: (1) ownership or right to possession of property, (2) wrongful disposition of the property right of another, and (3) damages. *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Reviewing the allegations of the FAC, the Court finds IID's conversion claim easily passes muster under Rule 12(b)(6). IID alleges it owns the transmission facilities. (Doc. No. 26 ¶ 52.) The Court finds this allegation sufficient to satisfy the first element of the claim, notwithstanding CAISO's argument that IID has failed to allege exclusive possession or control. (Doc. No. 28-1 at 31.) What CAISO ignores is that right to possession is only one way of establishing the first element. A plaintiff may also plead ownership. *See Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2002) (stating a plaintiff must show "'ownership *or* right to possession of property'" (quoting *G.S. Rasmussen & Assocs., Inc.*, 958 F.2d at 906) (emphasis added)). IID has done that here.

IID further alleges CAISO has used IID's transmission facilities to import substantial out-of-state power without compensating IID for this use and that this unauthorized use damages IID by rendering the used capacity "unavailable to IID and restrict[s] the development of new generation in IID's BAA." (*Id.* ¶¶ 9.C, 9.D, 163.) The Court finds these allegations sufficient to satisfy the last two elements of IID's conversion claim. Accordingly, the Court **DENIES IN PART** CAISO's motion to dismiss to the extent it seeks dismissal of IID's conversion claim.

**C.      Quantum Meruit and Restitution**

CAISO argues dismissal of the quantum meruit and restitution claims are appropriate because IID has failed to allege that CAISO benefited from the Path 42

upgrades or that CAISO requested them. (Doc. No. 28-1 at 32.) IID argues CAISO's position should be rejected in light of IID's allegations to the contrary. (Doc. No. 34 at 31.)

Under California law, quantum meruit is "an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Entmt. Grp., Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992). The elements of this claim are (1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4) that they were unpaid. *Haggerty v. Warner*, 115 Cal. App. 2d 468, 475 (1953). To state a claim for quantum meruit, a plaintiff must allege it acted pursuant to either an express or implied request for services and that the services rendered benefited the defendant. *Day v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 248 (2002). While the plaintiff need not plead the existence of a contract, it must show that "the services were rendered under some understanding or expectation of both parties that compensation therefore was to be made." *Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453, 458 (2004) (quoting *Estate of Mumford*, 173 Cal. 511, 523 (1916)); *see also Maglica v. Maglica*, 66 Cal. App. 4th 442, 455 (1998) (noting quantum meruit theory "operates *without* an actual agreement of the parties").[10]

The only elements at issue are whether IID has sufficiently alleged that CAISO requested the upgrades to Path 42 and that CAISO benefited from those upgrades. (Doc. No. 28-1 at 32.) Reviewing the allegations of the FAC, the Court finds IID has. IID alleges that CAISO recommended the Path 42 upgrades in a memorandum from CAISO's management to its board of governors in 2011. (Doc. No. 26 ¶¶ 103–04.) CAISO approved the recommendation in its 2010/2011 Transmission Plan, in which CAISO proposed to

---

[10] The Court considers the quantum meruit and restitution claims together because a claim for unjust enrichment may properly be construed "as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)).

reconductor Path 42. (*Id.* ¶¶ 107–10.) CAISO repeatedly stated that should these upgrades be accomplished, IID's MIC would correspondingly increase. (Doc. No. 26 ¶¶ 126, 133.) Accepting these allegations as true, the Court finds IID has sufficiently alleged that "CAISO implicitly requested, by and through its conduct, that IID perform the work, labor, and services" to Path 42. (*Id.* ¶ 236.) *See Earhart v. William Low Co.*, 25 Cal. 3d 503, 506 (1979) (holding that if the trial court finds plaintiff's allegations that he performed work at defendant's urging—work that the parties had long negotiated—to be true, then "the principles of fairness support plaintiff's recovery for the reasonable value of his labor").

The Court finds IID has also sufficiently alleged that CAISO benefited from the upgrades. Specifically, IID alleges CAISO benefited by using IID's transmission system, without compensation to IID, "to import power from Arizona and points east to replace the power lost from the closure of SONGS." (*Id.* ¶¶ 162(e), 163.) This sufficiently alleges an advantage conferred onto CAISO at IID's expense. *See First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1662 (1992) ("A person is enriched if the person receives a benefit at another's expense. Benefit means any type of advantage." (citation omitted)). For these reasons, the Court **DENIES IN PART** CAISO's motion to the extent it seeks dismissal of the quantum meruit and restitution claims.

### D. California's Unfair Competition Law ("UCL")

CAISO finally argues dismissal of the UCL claim is appropriate because IID's allegations fail to make out a claim under any of the three prongs. (Doc. No. 28-1 at 32–33.) "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation and internal quotation marks omitted). IID alleges that CAISO's conduct has violated all three prongs of the UCL. (Doc. No. 28 ¶¶ 223–24.) The Court will consider each prong in turn.

#### 1. Unlawful Prong

"By proscribing 'any unlawful' business practice, section 17200 borrows violations

of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 180 (citation and internal quotation marks omitted). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Id.* (quoting *Rubin v. Green*, 4 Cal. 4th 1187, 1200 (1993)) (internal quotation marks omitted). CAISO argues dismissal of the unlawful UCL claim is warranted because IID has not alleged a violation of any law. (Doc. No. 28-1 at 33) The Court agrees. While IID has sufficiently alleged its conversion, quantum meruit, and restitution claims, "common law violation[s] such as breach of contract [are] insufficient" to serve as predicates for an unlawful UCL claim. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). The Court therefore **GRANTS IN PART** CAISO's motion and **DISMISSES** IID's unlawful UCL claim. Because IID's antitrust claims have been dismissed with prejudice, the dismissal of the unlawful UCL claim is also **WITH PREJUDICE**.

### 2.    Unfair Prong

An act or practice is "unfair" under the UCL if a competitor's conduct "threatens an incipient violation of an antitrust law, *or* violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 187 (emphasis added). In other words, unfair acts or practices must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* at 186–87.

CAISO argues that dismissal of the unfair UCL claim is warranted because IID has failed to allege an antitrust violation. (Doc. No. 28-1 at 33; Doc. No. 35 at 11.) While this is true, it is not the only way in which an unfair UCL claim may be pled. Rather, an unfair UCL claim may also be predicated on conduct that "violates the policy or spirit of [the antitrust] laws because it[] . . . significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 187. "Acts that violate the spirit of the antitrust laws include

'horizontal price fixing, exclusive dealing, or monopolization.'" *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-CV-00595-BAS(MDD), 2016 WL 739796, at *9 (S.D. Cal. Feb. 25, 2016) (quoting *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1156 (S.D. Cal. 2014)).

The Court finds IID has sufficiently alleged monopolistic conduct that threatens competition for purposes of Rule 12(b)(6). Specifically, by depriving IID of its expanded MIC, generators of renewable energy located within IID's BAA who cannot interconnect directly with the CAISO grid cannot compete with other generators for the business of load serving entities located in or through the CAISO grid. (Doc. No. 26 ¶ 194.) This reduction in competition for generation potentially raises the costs of renewable energy for those entities. (*Id.* ¶ 195.) The reduction to IID's expanded MIC has also jeopardized certain renewable energy projects in IID's BAA. (*Id.* ¶ 197.) The additional burdens on IID, through the costs of the upgrades and CAISO's unauthorized use of IID's transmission facilities, ultimately affect the rates passed onto the public. (*Id.* ¶¶ 200–01.) IID alleges CAISO has engaged in its conduct to further its monopoly power in the relevant markets by forcing IID to join CAISO as a PTO. (*Id.* ¶¶ 9.C–F, 149, 162.) The Court finds these allegations sufficiently allege unfair acts or practices that threaten competition. Thus, the Court **DENIES IN PART** CAISO's motion.

### 3. Fraudulent Prong

Unlike common law fraud, a party can show a violation of the UCL's fraudulent practices prong without allegations of actual deception. *See Morgan v. Harmonix Music Sys., Inc.*, No. C08-5211 BZ, 2009 WL 2031765, at *5 (N.D. Cal. July 7, 2009). The term "fraudulent" as used in section 17200 "only requires a showing [that] members of the public 'are likely to be deceived.'" *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008) (quoting *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994)). "Unless the challenged conduct 'targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer.'" *Id.* (quoting *Aron v. U-Haul Co.*, 143 Cal. App. 4th 796, 806 (2006)).

CAISO argues that dismissal of the fraudulent UCL claim is warranted because IID has not alleged the public was deceived. (Doc. No. 28-1 at 33.) IID responds that it has alleged harm to the public. (Doc. No. 34 at 31.) However, harm to the public and deception of the public are not synonymous. Having reviewed the FAC, the Court finds it is devoid of any allegations that CAISO's conduct has or is likely to deceive the public or that the public was even aware of CAISO's conduct. *See Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 865 (N.D. Cal. 2014) (dismissing fraudulent UCL claim because "Cisco d[id] not allege that members of the public have been deceived by Capella's alleged fraudulent misrepresentations . . . . Indeed, Cisco does not even allege that members of the public are aware of Capella's misrepresentations"). CAISO's alleged deception of IID itself does not require a contrary conclusion. *See Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001) (stating a corporate-competitor "is not entitled to the protection of [the fraudulent] prong of [section] 17200 because it is not a member of the public or a consumer entitled to such protection. The Court has identified no case under the 'fraudulent' prong of [section] 17200 allowing one competitor to proceed against another on the basis that the defendant deceived him"). As such, the Court **GRANTS IN PART** CAISO's motion and **DISMISSES WITHOUT PREJUDICE** the fraudulent UCL claim.

//
//
//
//
//
//
//
//
//
//

15-CV-1576-AJB-RBB

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** CAISO's motion to dismiss. (Doc. No. 28.) The Court **DISMISSES** IID's federal antitrust, breach of tariff, and unlawful UCL claims **WITH PREJUDICE**. The Court **DISMISSES** the fraudulent UCL claim **WITHOUT PREJUDICE**. IID may file a second amended complaint curing the deficiencies noted herein with respect to the fraudulent UCL claim no later than ***twenty-one days*** following this order's issuance. Failure to amend the complaint will result in dismissal of that claim with prejudice. The Court **DENIES AS MOOT** IID's request to respond to CAISO's exhibit. (Doc. No. 44.)

**IT IS SO ORDERED.**

Dated:  August 1, 2016

Hon. Anthony J. Battaglia
United States District Judge