UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPERIAL IRRIGATION DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA INDEPENDENT SYSTEM OPERATOR CORPORATION,<br><br>Defendant. | Case No.: 15-CV-1576-AJB-RBB<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, (Doc. No. 77); AND**<br><br>**(2) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND, (Doc. No. 84)** |

Presently before the Court are Defendant California Independent System Operator Corporation's ("CAISO") motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c),[1] (Doc. No. 77), and Plaintiff Imperial Irrigation District's ("IID") motion for leave to amend pursuant to Rule 15, (Doc. No. 84). Both motions are fully briefed. Having reviewed the parties' arguments in light of controlling authority, and pursuant to Local Civil Rule 7.1.d.1, the Court finds the matters suitable for decision without oral argument. For the reasons set forth below, the Court **DENIES** CAISO's

---

[1] All references to "Rules" in this order are to the Federal Rules of Civil Procedure.

1

motion and **GRANTS** IID's motion. IID is **ORDERED** to file its second amended complaint on the docket no later than ***seven days following this order's issuance***.

## BACKGROUND

This dispute centers on nondiscriminatory access to California's electric transmission grid.[2] The parties in this litigation are two of the eight entities that provide electric transmission service and transmission operations services within the State of California. (Doc. No. 26 ¶¶ 2, 23.) CAISO controls the vast majority of California's electric transmission grid and thus controls entities' access to the customers located within CAISO's grid. (*Id.* ¶¶ 24, 85, 89, 91–92.)

In short, IID alleges that CAISO duped it into expending over $30 million in upgrades to Path 42, one of the two transmission lines that connect IID's BAA to CAISO's, by promising greater access to CAISO's grid. (*See id.* ¶¶ 39, 103, 107–15, 126–34, 141.) The revocation of this promise has resulted in renewable energy developers located near or within IID's BAA to bypass the IID system and connect directly with the CAISO system, thus depriving IID of significant revenue from the provision of interconnection services, transmission services, and transmission operations services. (*Id.* ¶¶ 9.A, 159, 173(a), 183.) It has also left developers of renewable energy with little ability to plan, finance, and build new renewable energy facilities that connect to IID's transmission system. (*Id.* ¶ 160.)

IID alleges that due to the developers connecting directly to CAISO's grid, there is a spillover of energy—of which CAISO knew and planned—onto IID's transmission system, which precludes IID from selling or otherwise using that capacity. (*Id.* ¶ 9.C.) IID further alleges CAISO has extensively used IID's transmission lines and infrastructure to import substantial out-of-state power without compensating IID for this use. (*Id.* ¶¶ 9.C, 173(g), 193.) IID alleges CAISO's actions were motivated by, *inter alia*, its intent to further

---

[2] The Court has exhaustively summarized this case's factual background in its orders ruling on CAISO's motions to dismiss. (Doc. Nos. 23, 51.) The Court assumes familiarity with those orders and accordingly will recite here only those facts necessary to understand the case's current posture with respect to the instant motions.

its monopolistic position in the relevant markets by forcing IID to join CAISO. (*Id.* ¶ 162.)

On July 16, 2015, IID filed the instant action, alleging claims for monopolization and attempted monopolization in violation of § 2 of the Sherman Act, and state law claims of breach of implied contract, conversion, quantum meruit, and restitution. (Doc. No. 1.) IID's amended complaint added a claim under California's unfair competition law ("UCL"). (Doc. No. 26 ¶¶ 222–25.) After two motions to dismiss and one motion for reconsideration, the only claims to have survived are the conversion and unfair UCL causes of action. (*See* Doc. No. 67.) CAISO now moves for judgment on the pleadings on these remaining claims. (Doc. No. 77.) IID seeks leaves to amend its complaint to add a claim for trespass. (Doc. No. 84.) Both matters are fully briefed. (Doc. Nos. 81, 83, 89, 90.)

## DISCUSSION

### I.  *CAISO's Motion for Judgment on the Pleadings*

CAISO asserts that it is entitled to judgment on the pleadings on IID's two remaining claims. CAISO argues that the conversion claim fails as a matter of law because the property at issue—IID's transmission lines and facilities—is real property, not personal property. (Doc. No. 77-1 at 4–6.)[3] CAISO further argues that IID's unfair UCL claim fails as a matter of law because there is no harm to competition based only on the increase in prices to consumers. (*Id.* at 6–7.)

### A.  **Legal Standard**

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings must be evaluated under the same standard applicable to motions to dismiss brought under Rule 12(b)(6). *See Enron Oil Trading & Trans. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997). Thus, the standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550

---

[3] The Court cites to the blue CM/ECF-generated document and page numbers located at the top of each page.

1  U.S. 544 (2007), applies to a motion for judgment on the pleadings. *Lowden v. T-Mobile USA, Inc.*, 378 F. App'x 693, 694 (9th Cir. 2010) ("To survive a Federal Rule of Civil Procedure 12(c) motion, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 544)). When deciding a motion for judgment on the pleadings, the Court assumes the allegations in the complaint are true and construes them in the light most favorable to the plaintiff. *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994). A judgment on the pleadings is appropriate when, even if all the allegations in the complaint are true, the moving party is entitled to judgment as a matter of law. *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005).

### B. Conversion

CAISO first seeks judgment on the conversion claim. CAISO argues that because the tort of conversion applies only to personal property, and because transmission lines and facilities are real property, IID's conversion claim fails as a matter of law. (Doc. No. 77-1 at 4–6.) IID responds that the law governing whether transmission facilities are real property is not as clear cut as CAISO would have the Court believe; as such, judgment on the pleadings is inappropriate. (Doc. No. 81 at 9–11.)[4]

Under California law, the elements of a conversion claim are (1) ownership or right to possession of the property; (2) wrongful disposition of the property right; and (3) damages. *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). The tort of conversion applies to personal property, not real property. *Salma v. Capon*, 161 Cal. App. 4th 1275, 1295 (2008). Stated another way, conversion of real property "is not a recognized tort." *Id.* at 1282.

California defines "real property" as land; "[t]hat which is affixed to land"; "[t]hat which is incidental or appurtenant to land"; and "[t]hat which is immovable by law[.]" Cal.

---

[4] IID also argues that the SAC sufficiently states a claim for trespass. (Doc. No. 81 at 7–9.) The Court will address this argument *infra*. *See infra* Discussion Section II.

Civ. Code § 658. "A thing is deemed to be affixed to land when it is . . . imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws[.]" *Id.* § 660. Personal property is defined as "[e]very kind of property that is not real" property. *Id.* § 663.

CAISO relies on multiple California cases that state electrical transmission lines and facilities are real property. In *A. S. Schulman Electric Co. v. State Board of Equalization*, the Court of Appeal noted that "electrical transmission and distribution lines . . . because of their relatively permanent nature and their either being bolted to concrete foundations or imbedded in the land, seem to [] constitute realty rather than tangible personalty." 49 Cal. App. 3d 180, 184 (1975).

IID responds that CAISO's authorities are unhelpful because they are tax law cases. (Doc. No. 81 at 10.) IID further asserts that because CAISO seeks to establish that the transmission lines are real property by virtue of being fixtures, whether the transmission lines are in fact real property turns on IID's intent; as such, the inquiry is not appropriate for adjudication on the instant motion. (*Id.* at 11.)

In its reply, CAISO does not dispute that its argument turns on whether the transmission lines and facilities constitute fixtures. To make this assessment, "[i]t is settled that three tests must be applied . . . : '(1) the manner of its annexation; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention of the party making the annexation.'" *Simms v. Los Angeles Cty.*, 35 Cal. 2d 303, 309 (1950) (quoting *San Diego Trust & Sav. Bank v. San Diego Cty.*, 16 Cal. 2d 142, 149 (1940)).

Contrary to CAISO's assertion, the Court cannot determine, on the record before it, that IID's transmission lines and facilities are real property given that IID's intention, as the party making the annexation, cannot be determined in the absence of discovery. This is particularly so given that IID does not own all of the land on which its lines and facilities run. (Doc. No. 81 at 11.) *See City of Vallejo v. Burrill*, 64 Cal. App. 399, 406–07 (1923) (finding that pipeline remained the city's personal property and was not a fixture of the

landowner's real property because it was incontrovertible that "it was the intention that the pipe-line should remain the property of the city, and that its uses were for the city alone").[5]

The Court acknowledges the existence of case law supporting CAISO's position, but agrees with IID that because these cases are all decided in the area of tax law, they are not dispositive at this juncture. First, the concepts employed by these cases are "relatively artificial" and "relatively self-contained" to the field of tax law:

> If [the field of tax law] utilizes popular meaning or concepts from other fields of law, it does so only by force of its own objectives and definitions. It does not define real property or "improvements" to real property, if only because it makes little use of these terms. Its definition of tangible personal property deals with tangibility, not with distinctions between personalty and realty. To pursue the will-o'-the-wisp of definitions, concepts and distinctions from other areas of law—where they are shaped by purposes and by social and economic factors unrelated to sales taxation—leads to false goals. The coverage of the sales tax law is shaped by its own provisions and definitions and, where these are unclear, by applying its own perceived policies and concepts.

*King v. State Bd. of Equalization*, 22 Cal. App. 3d 1006, 1010–11 (1972) (footnotes omitted). Second, there is case law supporting IID's position that the transmission lines and facilities are personal property. *See, e.g.*, *City of Vallejo*, 64 Cal. App. at 406–07. As such, the Court finds judgment on the pleadings as to IID's conversion claim is not appropriate.

### C. Unfair UCL Claim

CAISO next seeks judgment on the pleadings on IID's unfair UCL claim, asserting that it is subject to dismissal because it is not based on any harm to competition. (Doc. No.

---

[5] CAISO's citation to *Garden Water Corp. v. Fambrough* does not help CAISO on this point, given that it was "quite clear that the parties intended the pipelines and the easements for the pipelines to be treated as a unit." 245 Cal. App. 2d 324, 327 (1966). Another of CAISO's cases states similarly. *Chula Vista Elec. Co. v. State Bd. of Equalization*, 53 Cal. App. 3d 445, 450 (1975) ("Adaptation to use with the real property and the intention with which the property is installed must be considered as well as physical annexation." (citation omitted)).

77-1 at 6–7.) IID contends that CAISO improperly seeks reconsideration of the Court's prior orders given that this particular claim has survived CAISO's motions to dismiss and for reconsideration. (Doc. No. 81 at 6–7.) IID also argues that the unfair UCL claim is sufficiently stated because the SAC alleges injury to competition and, at any rate, injury to competition is not even necessary to state the claim. (*Id.* at 12–17.)[6]

The Court agrees that CAISO's motion amounts to nothing more than a third bite at the apple. But even when considering the merits of CAISO's position, the Court finds it is without merit. CAISO mounts a two-pronged attack against the unfair UCL claim, asserting (1) injury to a competitor is not injury to competition; and (2) an increase in consumer prices is insufficient to show harm to competition. (Doc. No. 77-1 at 6–7; Doc. No. 83 at 7.) This approach, however, ignores that when these two categories of allegations are coupled, they can sufficiently state an "antitrust injury of the type the antitrust laws were designed to prevent" and, thus, an unfair UCL claim. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1478 (9th Cir. 1997) (finding "an increase in consumer prices caused by the asserted conduct [of diverting indigent patients to other hospitals and threatening physicians who did not support hospital's monopoly] would constitute antitrust injury of the type the antitrust laws were designed to prevent"), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896, 925 (9th Cir. 2012).[7]

Here, IID alleges that CAISO duped IID into incurring millions of dollars in expenses and then used IID's facilities, without authorization, to import substantial out-of-state power. (Doc. No. 26 ¶¶ 186, 193.) IID alleges that this unauthorized use of its facilities renders such use unavailable to IID and the entities it serves. (*Id.* ¶¶ 9.D, 10, 193.) IID

---

[6] Because the entire FAC is couched in terms of IID competing with CAISO, the Court will not entertain IID's second argument, namely, that injury to competition is unnecessary to state an unfair UCL claim.

[7] The Ninth Circuit in *Lacey* overruled its prior decision in *Forsyth* only as to the "*Forsyth* rule." *Lacey*, 693 F.3d at 925–28 (stating the Ninth Circuit's now-defunct *Forsyth* rule as "a plaintiff waiv[ing] all claims alleged in a dismissed complaint which are not realleged in an amended complaint" (quoting *Forsyth*, 114 F.3d at 1474)).

asserts these additional burdens ultimately affect the rates passed onto the public. (*Id.* ¶¶ 186, 200–01.) CAISO cannot seriously assert that if the Court accepts these allegations as true, the increase in rates is the result of "pro-competitive conduct." (Doc. No. 83 at 7.)

The Court meant what it said in its last order: The unfair UCL claim is sufficiently stated to survive the pleadings stage. *See Forsyth*, 114 F.3d at 1478 (finding plaintiffs were entitled to survive summary judgment on Sherman Act monopolization and attempted monopolization claims, finding allegations of increased consumer prices due to conduct that "increased the operating cost of [] competitors" sufficient to create a genuine issue of material fact on the issue of antitrust injury); *see also Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 63 F.3d 1540, 1553 n.12 (10th Cir. 1995) (stating that monopolist's practice of scheduling courses to conflict with competitor's courses could raise competitor's costs and therefore "would qualify as anticompetitive conduct"); *Premier Elec. Constr. Co. v. Nat'l Elec. Contractors Ass'n*, 814 F.2d 358, 368 (7th Cir. 1987) (noting that when defendant "raised its rivals' costs," it "raised the market price to its own advantage," and that "[t]he principal purpose of the antitrust laws is to prevent overcharges to consumers"). As such, the Court **DENIES** CAISO's motion for judgment on the pleadings.

## II.     *IID's Motion for Leave to Amend the Complaint*

IID seeks leave to file a second amended complaint ("SAC") to add the word "trespass" after the word "conversion" to make clear that IID also brings a claim for trespass. (Doc. No. 84.) CAISO opposes the motion, arguing amendment is futile, IID has already been afforded multiple opportunities to properly plead its claims, and CAISO would be prejudiced. (Doc. No. 89.)

### A.     **Legal Standard**

Rule 15(a) governs leave to amend prior to trial. A party may amend its pleading once as a matter of course within 21 days after serving it; or, if the pleading is one requiring a response, within 21 days after service of the responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing

8

party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended the complaint*." Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (quoting *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id*. (emphasis in original).

### A. Analysis

The Court finds granting IID leave to amend its complaint is appropriate. Notwithstanding CAISO's arguments to the contrary, the Court finds amendment is not futile. The elements of trespass to property are (1) plaintiff owed the property; (2) defendant intentionally, recklessly, or negligently entered plaintiff's property; (3) plaintiff did not give permission for the entry; (4) plaintiff was actually harmed; and (5) defendant's entry was a substantial factor in causing plaintiff's harm. *Vega v. JPMorgan Chase Bank, N.A.*, 654 F. Supp. 2d 1104, 1119 (E.D. Cal. 2009). CAISO challenges IID's allegations on the third through fifth elements. (Doc. No. 83 at 5.) However, IID alleges that CAISO has used IID's transmission facilities without authorization. (Doc. No. 84-3 ¶ 193.) IID also alleges that it has been directly injured by CAISO's unauthorized use. (*Id.*) IID alleges the damage it has sustained is a "direct and foreseeable" consequence of CAISO's unauthorized use. (*Id.* ¶ 234.) As such, the Court does not find this to be the case where "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim . . . ." *Koistra v. Cty. of San Diego*, No. 16CV2539-GPC(AGS), 2017 WL 2578936, at *4 (S.D. Cal. June 14, 2017) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

9

15-CV-1576-AJB-RBB

Nor is the Court persuaded by CAISO's alternative arguments. IID has only amended its complaint once in this case; as such, the Court will not deny IID's request on that basis. Furthermore, while this case is two years old, it is still in the early stages of discovery, and IID filed its motion by the deadline set for such motions. (Doc. No. 80 at 1 ¶ 1.) As such, the Court does not find IID has unduly delayed in bringing its motion to amend. Finally, any prejudice CAISO suffers through the expenditure of its time and resources is CAISO's own doing. CAISO's arguments relating to the conversion claim could have been asserted in one of its two prior motions to dismiss or its motion for reconsideration. That CAISO is now embroiled in another round of motion practice is the result of its own tactical decisions. Accordingly, any prejudice to CAISO is insufficient to deny IID's request for leave to amend.

## CONCLUSION

Based on the foregoing, the Court **DENIES** CAISO's motion for judgment on the pleadings, (Doc. No. 77), and **GRANTS** IID's motion for leave to amend the complaint, (Doc. No. 84). The Court **ORDERS** IID to file its second amended complaint on the docket no later than *seven days following this order's issuance*.

**IT IS SO ORDERED.**

Dated: September 22, 2017

Hon. Anthony J. Battaglia
United States District Judge